UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUAN AGRAMONTE,

                          Petitioner,

v.

UNITED STATES OF AMERICA,

                          Defendant.

No. 15-CR-176 (KMK)
No. 16-CV-6678 (KMK)

ORDER

KENNETH M. KARAS, United States District Judge:

In January 2016, pro se Petitioner Juan Agramonte ("Agramonte" or "Petitioner") pled guilty to one narcotics conspiracy charge, and was sentenced to a below-Guidelines sentence of 78 months' imprisonment. (*See* Dkt. (entry for Jan. 5, 2016); Dkt. No. 264.) Agramonte has filed a Petition, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence (the "Petition"). (*See* Pet. (Dkt. No. 265).)[1] For the reasons stated herein, the Petition is denied.

## I. Factual History

On March 20, 2015, a grand jury returned Indictment 15-CR-176 (the "Indictment"), (Dkt. No. 2), charging Petitioner and 16 co-defendants with narcotics conspiracy. Count One of the Indictment charged all defendants, except Petitioner, with conspiring to distribute oxycodone, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). (*See* Indictment ¶¶ 1–19.) Count Two charged Agramonte and seven other defendants with conspiring to distribute heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). (*See id.* ¶¶ 20–29.) These charges followed an investigation of a narcotics trafficking organization that was distributing oxycodone and heroin

---

[1] All citations in this Order are to the criminal docket, Case No. 11-CR-630, unless noted otherwise.

throughout Rockland County. (Gov't's Mem. in Opp'n to Pet. ("Gov't's Opp'n") Ex. A ("Plea Agreement"), at 2–3 (Dkt. No. 308-1).) The investigation involved, among other techniques, wiretaps on cell phones of numerous individuals associated with the organization, physical surveillance, and seizures of narcotics. (*Id.* at 3.) As spelled out in the Presentence Investigation Report ("PSR"), Petitioner and others were involved in large-scale heroin distribution. (PSR ¶¶ 25, 32–46; Gov't's Opp'n 3.) Indeed, Petitioner was one of the main suppliers of heroin for the organization from the Bronx, where he resided, as revealed from many intercepted telephone calls. (*Id.* at 3–5.) During some of these calls, Petitioner was heard discussing prices and quantities of heroin transactions and discussing arrangements to import significant quantities of heroin from sources in Florida. (*Id.* at 4–5.) This evidence was corroborated by a cooperating witness, who purchased heroin from Petitioner going as far back as 2013, and by the seizure of over 100 grams of heroin from Petitioner's Bronx apartment. (*Id.*)

On January 5, 2016, pursuant to a plea agreement (the "Plea Agreement"), Petitioner pleaded guilty to a lesser included offense of conspiring to distribute, and possessing with intent to distribute, at least 100 grams or more of heroin, in violation of 21 U.S.C. § 841(b)(1)(B). (*See* Gov't's Opp'n Ex. A ("Plea Agreement"), at 1–2 (Dkt. No. 308-1).) The Plea Agreement set forth Petitioner's criminal history, the offense conduct (Petitioner agreed he was responsible for distributing between one and three kilograms of heroin distribution), and the Stipulated Guidelines Range. (*Id.* at 2–4.) The Plea Agreement also spelled out the immigration consequences of pleading guilty pursuant to it:

> The defendant recognizes that because he is not a citizen of the United States, his guilty plea and conviction make it very likely that his deportation from the United States is presumptively mandatory and that, at a minimum, he is at risk of being deported or suffering other adverse immigration consequences. The defendant acknowledges that he has discussed the possible immigration consequences (including deportation) of his guilty plea and conviction with defense counsel. The

2

> defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction, even if those consequences include deportation from the United States. It is agreed that the defendant will have no right to withdraw his guilty plea based on any actual or perceived adverse immigration consequences (including deportation) resulting from the guilty plea and conviction. It is further agreed that the defendant will not challenge his conviction or sentence on direct appeal, or through litigation under Title 28, United States Code, Section 2255 and/or Section 2241, on the basis of any actual or perceived adverse immigration consequences (including deportation) resulting from his guilty plea and conviction.

(*Id.* at 5.)

The Plea Agreement also contained a waiver providing that Petitioner would not "file a direct appeal," "nor bring a collateral challenge, including but not limited to an application under [28 U.S.C. § 2255]," "nor seek a sentence modification . . . of any sentence within or below the Stipulated Guidelines Range of 78 to 97 months' imprisonment." (*Id.* at 4–5.)

On January 5, 2016, Petitioner pled guilty before Magistrate Judge Judith McCarthy, who conducted a thorough allocution. (*See generally* Gov't's Opp'n Ex. B ("Plea Tr.") (Dkt. No. 308-2).) For example, during the colloquy, Judge McCarthy asked Petitioner (i) if he was a United States Citizen (the answer was that he was not), (*id.* at 4); (ii) if he was satisfied with his counsel's representation of him (the answer was that he was satisfied), (*id.* at 10); (iii) if he had reviewed with counsel and understood the entire Plea Agreement (the answer was that he had), (*id.* at 11–12); and (iv) if he understood that under the Plea Agreement he would "very likely" be deported as a result of the guilty plea (the answer was that he understood), (*id.* at 16).

Also, during the allocution, Judge McCarthy noted that in the Plea Agreement, Petitioner "acknowledge[d]" that he had "discussed the possible immigration consequences, including deportation," of his guilty plea "with [his] counsel." (*Id.*) Petitioner acknowledged that he understood this. (*Id.*) Judge McCarthy further advised Petitioner that in the Plea Agreement, he was "affirming" that he "want[ed] to plead guilty, regardless of any immigration consequences

3

that may result from a guilty plea and conviction, even if those consequences include deportation from the United States." (*Id.* at 17.) Again, Petitioner acknowledged that he agreed with Judge McCarthy's statement. (*Id.*) Notwithstanding Petitioner's acknowledgement, Judge McCarthy emphasized: "I also want to make sure that you understand you'll have no right to withdraw your guilty plea, based on any actual or perceived adverse immigration consequences, including deportation, resulting from the guilty plea and conviction." (*Id.*) Petitioner responded, "Yes, ma'am." (*Id.*)

Regarding the appeal waiver provision, Judge McCarthy confirmed that Petitioner understood the Stipulated Guidelines range was 78 to 97 months' imprisonment. (*Id.* at 18.) Then, Judge McCarthy asked Petitioner if he understood that he was waiving his right to challenge, via appeal and/or a § 2255 challenge, any sentence within that Stipulated Guidelines range. (*Id.* at 20.) Petitioner responded: "I understand." (*Id.*) Returning to the immigration consequences of conviction, Judge McCarthy asked Petitioner if he was "sure" he understood that he could not "challenge [his] conviction or sentence on direct appeal or through litigation under [28 U.S.C. § 2255] . . . on the basis of an actual or perceived adverse immigration consequence, including deportation, resulting from [his] guilty plea and conviction," and if he had discussed the immigration consequences with his attorney. (*Id.* at 20, 25.) Petitioner again indicated that he understood the consequences and confirmed that he spoke to his attorney about them. (*Id.* at 20, 25.) Based on these and all answers that Petitioner provided, Judge McCarthy recommended that this Court accept Petitioner's guilty plea, which the Court did. (Dkt. Nos. 134, 257.)

The Court sentenced Petitioner on June 22, 2016. (Dkt. (entry for June 22, 2016); Gov't's Opp'n Ex. C ("Sentence Tr.") (Dkt. No. 308-3).) The Court determined that the

4

applicable Guidelines range was 87 to 108 months, which was higher than the Stipulated Guidelines range due to a prior sentence of which the Government was not aware, but nonetheless sentenced Petitioner to a sentence of 78 months' imprisonment. (*Id.* at 27–28, 34; Gov't's Opp'n 9.) The Court also advised Petitioner of his right to appeal, to the extent it was not waived. (Sentence Tr. 38.)

Petitioner subsequently filed the instant Petition.

## II.  Discussion

Petitioner proffers two grounds upon which he claims his Petition should be granted. First, he argues that his trial counsel was constitutionally ineffective because he misled Petitioner about the deportation consequences of his guilty plea. (Pet. 2–4.)[2] Second, he argues that his trial counsel was constitutionally ineffective because he failed to consult with Petitioner about filing an appeal. (*Id.* at 4–5.)

### A.  Standard of Review

#### 1.  § 2255 Petitions

A prisoner in federal custody may move to vacate, set aside, or correct his sentence only "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).[3] "Because collateral challenges are in tension with society's

---

[2] The pages of the Petition are unnumbered. Thus, the Court cites to the ECF-stamped page numbers on the top righthand side of the document to avoid confusion.

[3] Title 28 U.S.C. § 2255(a) provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was

strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (citation and quotation marks omitted). To prevail on a collateral attack of a final judgment under § 2255, a petitioner must demonstrate either the existence of a "constitutional error . . . or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (citation and quotation marks omitted); *accord Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000); *Rodriguez v. United States*, No. 11-CV-2957, 2013 WL 6171618, at *1 (S.D.N.Y. Nov. 25, 2013), *aff'd*, 679 F. App'x 41 (2d Cir. 2017).

In ruling on a § 2255 petition, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Moreover, a hearing is not required where the petitioner's allegations are "vague, conclusory, or palpably incredible." *Gonzalez v. United States*, 722 F.3d 118, 130–31 (2d Cir. 2013) (citing *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). To justify a hearing, the petition "must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief." *Id.* at 131. Finally, because Petitioner is appearing pro se, the Court

---

without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

construes the Petition and his other submissions liberally and interprets them to raise the strongest arguments that they suggest. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001).

### 2. Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are evaluated under the framework set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "First, the [petitioner] must show that counsel's performance was deficient." *Id.* at 687. "Second, the [petitioner] must show that the deficient performance prejudiced the defense." *Id.*

A petitioner will not meet the first prong based solely on disagreements with counsel's strategy or advice. Indeed, there is a "strong presumption" that counsel's conduct fell within the vast spectrum of reasonable assistance, and it is the petitioner's burden to demonstrate "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (citation omitted); *see also Bonilla v. Lee*, 35 F. Supp. 3d 551, 575 (S.D.N.Y. 2014) (same); *Henderson v. Martuscello*, No. 10-CV-5135, 2013 WL 6463348, at *15 (S.D.N.Y. Dec. 10, 2013) (same). Thus, to satisfy this prong, a petitioner must demonstrate that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. In assessing counsel's conduct, "a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citations omitted) (quoting *Strickland*, 466 U.S. at 690).

To satisfy the second prong, a petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also McNaught v. United States*, 646 F. Supp. 2d 372, 378 (S.D.N.Y. 2009) (same). Measuring this probability depends on the context of the alleged error. Where the challenge is to a guilty plea on the basis of ineffective assistance of counsel, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *United States v. Cuoto*, 311 F.3d 179, 187 (2d Cir. 2002) (alteration omitted) (citation and quotation marks omitted), *abrogated on other grounds by Padilla v. Kentucky*, 599 U.S. 356 (2010). In the sentencing context, a petitioner must demonstrate that but for counsel's ineffective assistance, a different sentence was probable. *See United States v. Workman*, 110 F.3d 915, 920 (2d Cir. 1997); *United States v. Gallo-Lopez*, 931 F. Supp. 146, 150 (N.D.N.Y. 1996) (dismissing § 2255 petition because the petitioner failed to establish that the sentence would have been different if counsel had made other arguments in support of a downward departure). "In considering an ineffective counsel claim, a court need not accept a petitioner's uncorroborated, self-serving testimony as true." *Grullon v. United States*, No. 99-CV-1877, 2004 WL 1900340, at *6 (S.D.N.Y. Aug. 24, 2004) (citation omitted), *reconsideration denied*, 2005 WL 1560479 (S.D.N.Y. June 28, 2005).

B. Analysis

1. Immigration Consequences

As noted, Petitioner claims that his trial counsel did not advise him of the potential deportation consequences from pleading guilty. In fact, in his Memorandum of Law in support

8

of his Petition, Petitioner asserts that his counsel "assured" Petitioner that "he would not be deported." (Pet. 3.) This is a frivolous claim that is conclusively refuted by the indisputable record. First, the Plea Agreement itself fatally undercuts Petitioner's self-serving assertion. In particular, the Plea Agreement stated that Petitioner "discussed the possible immigration consequences (including deportation) of his guilty plea" with his attorney, and that Petitioner "want[ed] to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction, *even if those consequences include deportation from the United States*." (Plea Agreement 5 (emphasis added).) The Plea Agreement also provided that Petitioner would "not challenge" through, among other things, "litigation under [§ 2255] on the basis of any actual or perceived adverse immigration consequences (including deportation) resulting from his guilty plea and conviction." (*Id.*) Second, as noted, Petitioner acknowledged, under oath during the plea colloquy, that he understood these provisions. (Plea Tr. 16–17.) As just one example, Petitioner was asked if it was true, as noted in the Plea Agreement, that he spoke to his lawyer about the immigration consequences of pleading guilty and that he had affirmed that he wanted to plead guilty regardless of the fact that he faced deportation if convicted. (*Id.*) He affirmed both statements. (*Id.*)

The combination of the Plea Agreement and the allocution doom Petitioner's claim. First, the claim is waived. Petitioner agreed in writing not to legally challenge, including by way of a habeas petition, his conviction because of any immigration consequences, including deportation, and then he acknowledged this waiver during the plea. (*See generally* Plea Agreement.) The Second Circuit "ha[s] long held that 'waivers of the right to appeal a sentence are presumptively enforceable.'" *United States v. Burden*, 860 F.3d 45, 51 (2d Cir. 2017) (alteration omitted) (quoting *United States v. Arevalo*, 628 F.3d 93, 98 (2d Cir. 2010)). Indeed,

9

courts have "repeatedly upheld the validity of such waivers" where they are "knowingly, voluntarily, and competently provided by the defendant." *United States v. Gomez-Perez*, 215 F.3d 315, 318 (2d Cir. 2000) (collecting cases); *see also United States v. Djelevic*, 161 F.3d 104, 106 (2d Cir. 1998) ("It is by now well-settled that a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed upon guideline range is enforceable." (collecting cases)). "A knowing and voluntary waiver of the right to litigate pursuant to [§] 2255 is also valid and enforceable." *Abramo v. United States*, No. 12-CV-1803, 2014 WL 1171735, at *8 (S.D.N.Y. Mar. 21, 2014) (citations omitted); *see also Frederick v. Warden, Lewisburg Corr. Facility*, 308 F.3d 192, 195 (2d Cir. 2002) ("There is no general bar to a waiver of collateral attack rights in a plea agreement." (citation omitted)); *Russo v. United States*, 313 F. Supp. 2d 263, 265 (S.D.N.Y. 2004) ("The [Second] Circuit has specifically held that a waiver of a right to appeal in a plea agreement includes a waiver of a right to file a § 2255 petition challenging his or her sentence." (citing *United States v. Pipitone*, 67 F.3d 34, 39 (2d Cir. 1995))).[4]

Second, the claim fails on the merits. To begin, the Plea Agreement and Petitioner's statements during the plea colloquy prove beyond all doubt that Petitioner's counsel *did* discuss the immigration consequences of pleading guilty. (*See* Plea Agreement 5; Plea Tr. 25.)

---

[4] There are exceptions that can invalidate a waiver. *See Karimu v. United States*, Nos. 13-CV-1689, 10-CR-422, 2013 WL 4017168, at *3–4 (S.D.N.Y. Aug. 6, 2013) (discussing circumstances barring the application of a sentence/collateral challenge waiver provision in a plea agreement). One occurs when a court imposes a sentence based on certain "constitutionally impermissible factors," such as a defendant's race, ethnicity, or other prohibited biases. *See Gomez-Perez*, 215 F.3d at 319; *see also United States v. Johnson*, 347 F.3d 412, 415–16, 418–19 (2d Cir. 2003) (indigent status); *United States v. Jacobson*, 15 F.3d 19, 23 (2d Cir. 1994) (naturalization status). Relatedly, the court's abdication of its judicial responsibility, by failing to offer *any* rationale for its sentence, can invalidate a waiver. *See United States v. Yemitan*, 70 F.3d 746, 748 (2d Cir. 1995). Another exception involves a breach of the plea agreement by the Government. *See Gomez-Perez*, 215 F.3d at 319. None of these circumstances has been, nor could be, alleged here.

10

Petitioner cannot escape these statements or use his unsubstantiated assertions in his Petition even to force a hearing on this claim. As the Supreme Court has emphasized, "the representations of the defendant . . . at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977); *see also Chambers v. United States,* Nos. 11-CR-630, 16-CV-1049, 2019 WL 1429545, at *5 (S.D.N.Y. Mar. 29, 2019) ("[The] [p]etitioner's claim has no evidence to support it, which, when weighed against his admission, made in court and under oath, that he was guilty of the § 924(c) count . . . condemns it to failure." (record citation omitted)); *Gonzalez v. Stanford*, No. 13-CV-3324, 2016 WL 3963166, at *10 (S.D.N.Y. July 21, 2016) ("Statements made by a defendant during his guilty plea allocution carry a strong presumption of verity . . . and are generally treated as conclusive in the face of the defendant's later attempt to contradict them." (alteration in original) (citation and quotation marks omitted)).

Beyond this, Petitioner has not come close to demonstrating any prejudice from any supposed ineffectiveness. As noted, to establish prejudice in the context of a guilty plea, a petitioner must establish that if counsel had provided accurate advice, the petitioner would have gone to trial. *See United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005). Petitioner is boxed out from establishing prejudice given the Plea Agreement and his statements during the plea allocution. (*See* Plea Agreement 5; Plea Tr. 16–17, 20, 25.) Petitioner fully understood the immigration consequences from pleading guilty, leaving no room for the argument that he would have made a different decision than the one he did. On this point, it bears noting that Petitioner receive substantial benefits from pleading guilty, and not going to trial, including being allowed to plead to a lesser offense (where he faced a five-year instead of a ten-year mandatory minimum

sentence) and being eligible for a three-point reduction under the Sentencing Guidelines for acceptance of responsibility. (Plea Agreement 1 n.1, 2–3; Sentence Tr. 4–5, 27; Gov't's Opp'n 12.) These benefits further belie any claim of prejudice from trial counsel's supposed advice. *See United States v. Edwards*, 214 Fed. App'x 57, 61 (2d Cir. 2007) ("[A] number of factors strongly indicate that [the defendant] would not lightly have foregone the government's plea deal. To wit, the defendant . . . earned a three-level reduction from his base offense level for acceptance of responsibility, which he would have foregone had he gone to trial . . . ."). Thus, even if trial counsel provided inaccurate information about the immigration consequences from pleading guilty, Petitioner has not established the requisite prejudice from such advice, because he has failed to establish that he would have otherwise proceeded to trial.

2. Appeal

Petitioner also argues that his trial attorney failed to speak with him about a possible appeal of the sentence Petitioner received, which was met with Petitioner's "displeasure." (Pet. 4.) This claim has no merit whatsoever. First, as noted, Petitioner agreed in the Plea Agreement that he would "not file a direct appeal," or litigate "under Title 28, United States Code, Section 2255 and/or Section 2241[,] . . . any sentence within or below the Stipulated Guidelines Range." (Plea Agreement 4.) This provision was highlighted during the colloquy at the plea allocution, (Plea Tr. 20), which plainly validates the waiver. *See United States v. Monzon*, 359 F.3d 110, 116 (2d Cir. 2004) (noting that a waiver is knowing if the "defendant fully understood the potential consequences of his waiver" (citation omitted)); *United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001) (noting that in determining whether a defendant understood the consequences of a waiver, the district court is "entitled to rely upon the defendant's sworn statements, made in open court . . . , that he understood . . . that he was waiving his right to

12

appeal a sentence below [the Stipulated Guidelines Range]" (citation omitted)). Because the Court imposed a sentence below the Stipulated Guidelines Range, (Sentence Tr. 27–28, 34), Petitioner must first overcome the hurdle imposed by this valid waiver. *See Flamenco v. United States*, No. 11-CV-633, 2014 WL 775000, at *3 (E.D.N.Y. Feb. 24, 2014) ("Where a defendant knowingly and voluntarily waives his right to appeal if his sentence falls at or below a stipulated range pursuant to the plain language of a plea agreement, a challenge to the sentence must be dismissed." (citation omitted)).

The "exceptions to the presumption of the enforceability of a waiver . . . occupy a very circumscribed area of [the Second Circuit's] jurisprudence." *Gomez-Perez*, 215 F.3d at 319. One area where the presumptive enforceability of a waiver may be overcome is by "an attack on the validity of the process by which the waiver has been procured." *Frederick*, 308 F.3d at 195 (citations omitted). In recognizing this exception, however, the Second Circuit has distinguished between "challenging the attorney's role in shaping the defendant's bargaining position[,] [which] cannot avoid the waiver, [and] challenging the attorney's *advice* about that bargaining position, by connecting the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct." *Parisi v. United States*, 529 F.3d 134, 138–39 (2d Cir. 2008) (emphasis in original). "Thus, a claim of ineffective assistance that is unrelated to the plea bargaining process does not provide a basis upon which to invalidate a waiver of the right to challenge the conviction by appeal or by a [§] 2255 proceeding." *Abramo*, 2014 WL 1171735, at *10 (citation omitted). This means, for example, that a claim of ineffective assistance is waived when it relates to counsel's performance at sentencing. *See Djelevic*, 161 F.3d at 107 (holding that a claim that "counsel was ineffective not at the time of the plea, but at sentencing," does not survive the waiver); *Abramo*, 2014 WL 1171735, at *10 (noting that "counsel's alleged

deficiencies at sentencing are . . . barred by [the petitioner's] knowing and voluntary waiver of the right to collaterally attack the sentence" (citation and quotation marks omitted)). Thus, to the extent Petitioner was and is displeased with the Court's sentence, he waived any right to challenge it, by direct appeal or collateral challenge.

Beyond being waived, Petitioner's claim fails on the merits. First, while it may be the case that it is error for a lawyer to fail to file an appeal when given a "specific instruction" to do so, *Campusano v. United* States, 442 F.3d 770, 773 (2d Cir. 2006), Petitioner does not claim that he provided such a specific instruction. Instead, he merely claims that he would have instructed his lawyer to file an appeal, if he was asked to do so. (Pet. 4–5.) This defeats Petitioner's claim. *See Kapelioujnyi v. United States*, 779 F Supp. 2d 250, 253 (E.D.N.Y. 2009) (rejecting a claim that petitioner "expressed interest" in an appeal), *aff'd*, 422 F. App'x 25 (2d Cir. 2011). Second, Petitioner again fails to establish any prejudice from any supposedly ineffective assistance. Simply put, Petitioner has not identified *any* basis upon which to believe an appeal would have been successful. Being "displeased" with a sentence, (Pet. 4), is not a basis for his reversal. This is particularly so, given that the Court imposed a sentence *below* the Sentencing Guidelines range, (Sentence Tr. 27–28, 34). In the absence of any error in this sentence, Petitioner's claim fails.

### III. Conclusion

For the reasons discussed above, the Court dismisses the Petition.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be

taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and finding that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith).

The Clerk of the Court is respectfully directed to enter a judgment in favor of Respondent and to close this case.

SO ORDERED.

DATED:    March 25, 2020
          White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE